## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.: 18-35634 |
| | ) | |
| DENISE M KUBAS LONGO, | ) | Chapter 7 |
| | ) | |
| | ) | Honorable Pamela S. Hollis |
| Debtor(s). | ) | (Joliet) |
| | ) | |

### NOTICE OF MOTION

To:   See attached Service List

  PLEASE TAKE NOTICE that on **February 15, 2019 at 10:00 a.m.**, or as soon thereafter as counsel may be heard, I shall appear before the Honorable Pamela S. Hollis at the Joliet City Hall, Second Floor, 150 West Jefferson Street, Joliet, Illinois, or whomever may be sitting in place and stead, and then and there present the TRUSTEE'S APPLICATION TO EMPLOY REAL ESTATE BROKER, a copy of which is attached hereto and hereby served upon you.

                */s/ Joji Takada*
                Bankruptcy Trustee

### PROOF OF SERVICE

  I, the undersigned attorney, certify that I served a copy of this NOTICE OF MOTION and attached TRUSTEE'S APPLICATION TO EMPLOY REAL ESTATE BROKER upon the person(s) listed above by mailing the same by First Class U.S. Mail at Chicago, Illinois on the date set forth below, unless a copy was served electronically which occurs automatically upon the filing of the aforesaid documents with the Clerk of the Bankruptcy Court through the CM/ECF system.

Dated: February 7, 2019            */s/ Joji Takada*
                Bankruptcy Trustee

Prepared by:
Joji Takada
TAKADA LAW OFFICE, LLC
6336 North Cicero Avenue, Suite 201
Chicago, Illinois 60646
Tel: 773-790-4888

{00011036 / 2019 / 002 /}

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No.: 18-35634 |
| | ) | |
| DENISE M KUBAS LONGO, | ) | Chapter 7 |
| | ) | |
| | ) | Honorable Pamela S. Hollis |
| Debtor(s). | ) | (Joliet) |
| | ) | |

**TRUSTEE'S APPLICATION TO EMPLOY
REAL ESTATE BROKER**

Joji Takada ("Trustee"), not individually but as Chapter 7 Trustee of the bankruptcy estate of Denise Kubas Longo ("Debtor"), pursuant to Section 327(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure, respectfully requests entry of an order authorizing Trustee to employ Michael Hansbrough and Prestige Properties Real Estate Pros, Inc. (collectively, "Broker"). In support of this Application, Trustee states as follows:

**BACKGROUND**

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409. Consideration of the Application is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (M) and (O).

2. On December 28, 2018, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

3. Joji Takada is the duly appointed and qualified Chapter 7 Trustee.

4. Schedule A lists Debtor's ownership of that certain rental property commonly known as 2116 Glenridge Court, Plainfield, Illinois (the "Real Property").

5. The scheduled value of the Real Property is $100,000, with a mortgage of approximately $105,000.

6. Trustee has conferred with Broker and believes the value of the Real Property is in excess of $165,000, taking into consideration the Real Property's current condition.

7. Trustee believes liquidating the Real Property is in the best interest of creditors, and desires to engage Broker to market and sell the Real Property pursuant to the Exclusive Right to Sell Agreement and Rider to same (the "Listing Agreement"), a copy of which is attached hereto as <u>Exhibit A</u>.

## RELIEF REQUESTED

8. Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a), Trustee requests the entry of an order authorizing Trustee to enter into the Listing Agreement and retain Broker as Trustee's real estate broker to market and sell the Real Property pursuant to the terms thereof.

## BASIS FOR RELIEF REQUESTED

9. Trustee requires the assistance of an experienced real estate broker for the purpose of marketing the Real Property for sale.

10. Trustee has consulted with Broker and desires to enter into the Listing Agreement with Broker.

11. Broker maintains offices at Two River Place, Suite E, Lansing, Illinois, and is familiar with the area in which the Real Property is located.

12. Broker has substantial experience in marketing property similar to the Real Property, and is qualified to assist Trustee in marketing the Real Property for sale.

13. On information and belief, Broker is a disinterested party within the meaning of Section 101(14) of the Bankruptcy Code. The Affidavit of Michael Hansbrough of Prestige Properties Real Estate Pros, Inc. is attached hereto as <u>Exhibit B</u>.

14. Trustee has sent this Application to Debtor, Debtor's counsel and the U.S. Trustee on approximately seven days notice.

WHEREFORE, Trustee respectfully requests that the Court enter an Order:

A. Authorizing Trustee to employ Michael Hansbrough of Prestige Properties Real Estate Pros, Inc. as Trustee's real estate broker pursuant to the terms of the Listing Agreement;

B. Order Debtor to cooperate and assist Trustee and Trustee's professionals in listing and marketing the real estate; and

C. Granting such other and further relief as this Court deems just and fair.

Dated: February 7, 2019                     */s/ Joji Takada*
                                            Bankruptcy Trustee

Prepared by
Joji Takada
6336 North Cicero Avenue, Suite 201
Chicago, Illinois 60646
Tel: 773-790-4888

## SERVICE LIST

**Electronic Mail Notice List:**

- Patrick S Layng     USTPRegion11.ES.ECF@usdoj.gov
- Dana N O'Brien     dana.obrien@mccalla.com, NDistrict@mccalla.com
- John C Renzi     jcrenzi@jprlaw.net

**First Class Mail Notice List:**

Denise M. Kubas Longo
2116 Glenridge Court
Plainfield, IL 60586

{00011036 / 2019 / 002 /}

**ILLINOIS ASSOCIATION OF REALTORS®**
**EXCLUSIVE RIGHT TO SELL CONTRACT**
**(DUAL AGENCY DISCLOSURE AND CONSENT INCLUDED)**



1. In consideration of the services to be performed by _____, (Brokerage Company, hereinafter referred to as "Broker") and the commissions to be paid by _____, ("Seller"), the parties agree that Broker shall have the exclusive right to market and sell Seller's property upon the following terms and conditions:

   Property Address:_____
   City: _____, Illinois   Zip: _____
   Marketing Price: $_____
   Marketing Period: From _____ 2____ through 11:59 p.m. on _____, 2____.

2. Broker agrees to provide those brokerage services set forth in Section 15-75 of the Illinois Real Estate License Act of 2000.

3. If during the term of this Contract Broker obtains an offer to purchase the property from a ready, willing, and able buyer at the marketing price, or if Seller enters into a contract or receives an offer that results in a contract for the sale or exchange of the property at any price and upon any terms to which Seller consents, Seller shall be obligated to pay Broker a commission of _____ percent (___%) of the total purchase price of the sale or exchange.  The full commission is to be paid at closing, which in the case of a sale on contract for deed shall be at the time buyer and Seller execute the initial contract or agreement for deed.

4. Seller agrees that such a commission shall be paid if the property is sold or exchanged by Seller within a protection period of _____ (__) days following the term of this Contract or any extensions thereof to anyone to whom the property was presented during the term of this Contract.  However, this provision shall not apply if Seller has entered into a valid, written listing agreement with another licensed real estate broker during the protection period.

5. In the event a purchase contract is entered into and buyer defaults without fault on the Seller's part, Broker will waive the commission, and this agreement shall be continued from the date of default through the date provided in paragraph 1.  ~~Should Seller default on any contract for the purchase or exchange of the property, any commission owed under this agreement shall become payable immediately.~~

   ~~[5. ALTERNATE TO BE SUBSTITUTED IN LIEU OF THE ABOVE ¶5.] In the event a purchase contract is entered into and buyer defaults with or without fault on the Seller's part, any commission owed under this contract shall become payable immediately. Should Seller default on any contract for the purchase or exchange of the property, any commission owed under this agreement shall become payable immediately.~~

6. When a contract to purchase is entered into for the purchase of Seller's property, the buyer may deposit earnest money with Broker.  Broker will hold any such earnest money in a special, non-interest bearing escrow account on behalf of the buyer and Seller.  At closing, the earnest money will be disbursed according to the terms of the contract to purchase. If the transaction fails to close:

   (a)  due to fault of the Seller, the earnest money shall be returned to the buyer.

   **[AS TO ¶S (b) THROUGH (d) BELOW, THE PARTIES SHOULD CHECK THE ONE PARAGRAPH WHICH APPLIES].**

   ☐  ~~(b)  DUE TO FAULT OF THE BUYER, THE EARNEST MONEY SHALL FIRST GO TOWARD PAYING THE COMMISSION BROKER WOULD HAVE EARNED IN THE SALE, AND THE BALANCE, IF ANY, SHALL GO TO SELLER.~~

   ☐  (c)  DUE TO FAULT OF THE BUYER, THE EARNEST MONEY SHALL BE DISTRIBUTED TO THE SELLER, LESS ANY COSTS OF ADVERTISING OR REASONABLE  EXPENSES INCURRED BY BROKER.

   ☐  ~~(d) due to fault of the buyer, the earnest money shall be distributed to the Seller.~~

7. Seller agrees that for the purpose of marketing Seller's property, Broker shall place Seller's property in the Multiple Listing Service(s) in which Broker is a member.

8. Seller makes the following elections with regard to having Sellers's property displayed on any Internet site:
   (circle YES or NO to all that apply)
   - Display listing on any Internet site:                                                          **YES**   ~~NO~~
   - Display Seller's property address on Internet:                                          **YES**   ~~NO~~

   > **Seller understands and acknowledges that if seller circles "NO" for the above two options, consumers who conduct searches for listings on the Internet will not see the corresponding information about Sellers' property in response to their searches.**
   >
   > _____     _____     _____
   > Seller's Initials     Seller's Initials     Date

   - Allow for automatic valuation tools to be used for Seller's listing:         **YES**   ~~NO~~
   - Allow for blogging or comments to be used or made regarding Seller's listing:   **YES**   ~~NO~~

9. Seller(s) acknowledge(s) that they have been informed of the responsibilities imposed upon sellers under the Residential Real Property Disclosure Act.  Seller agrees to comply with the requirements of this Act to the best of Seller's ability and  to  not knowingly give any false or inaccurate information regarding the disclosures required by that Act.

                                                                                                                        EXHIBIT A

10. Broker designates _____, ("Seller's Designated Agent"), a sales associate(s) affiliated with Broker as the only legal agent(s) of the Seller. ~~Broker reserves the right to name additional designated agents when in Broker's discretion it is necessary. If additional designated agents are named, Seller shall be informed in writing within a reasonable time. (ADD IF DESIRED: Seller acknowledges that Seller's Designated Agent may from time to time have another sales associate, who is not an agent of Seller, sit an open house of Seller's property or provide similar support in the marketing of Seller's property.) Seller understands and agrees that this agreement is a contract for Broker to market Seller's property and that Seller's Designated Agent(s) is (are) the only legal agent(s) of Seller. Seller's Designated Agent will be primarily responsible for the direct marketing and sale of Seller's property.~~

11. Seller has been informed that potential buyers may elect to employ the services of a licensed real estate broker or sales associate as their own agent (buyer's agent).

12. **DISCLOSURE AND CONSENT TO DUAL AGENCY**

    **NOTE** TO CONSUMER: THIS SECTION SERVES THREE PURPOSES.  FIRST, IT DISCLOSES THAT A REAL ESTATE LICENSEE MAY POTENTIALLY ACT AS A DUAL AGENT, THAT IS, REPRESENT MORE THAN ONE PARTY TO THE TRANSACTION.  SECOND, THIS SECTION EXPLAINS THE CONCEPT OF DUAL AGENCY.  THIRD, THIS SECTION SEEKS YOUR CONSENT TO ALLOW THE REAL ESTATE LICENSEE TO ACT AS A DUAL AGENT.  A LICENSEE MAY LEGALLY ACT AS A DUAL AGENT ONLY WITH YOUR CONSENT. BY CHOOSING TO SIGN THIS SECTION, YOUR CONSENT TO DUAL AGENCY REPRESENTATION IS PRESUMED.

    The undersigned _____, ("Licensee"/"Seller's Designated Agent"), may
    (insert name(s) of Licensee undertaking dual representation)
    undertake a dual representation (represent both the seller or landlord and the buyer or tenant) for the sale or lease of property. The undersigned acknowledge they were informed of the possibility of this type of representation. Before signing this document please read the following:

    Representing more than one party to a transaction presents a conflict of interest since both clients may rely upon Licensee's advice and the client's respective interests may be adverse to each other.  Licensee will undertake this representation only with the written consent of ALL clients in the transaction.

    Any agreement between the clients as to a final contract price and other terms is a result of negotiations between the clients acting in their own best interests and on their own behalf.  You acknowledge that Licensee has explained the implications of dual representation, including the risks involved, and understand that you have been advised to seek independent advice from your advisors or attorneys before signing any documents in this transaction.

    **WHAT A LICENSEE CAN DO FOR CLIENTS WHEN ACTING AS A DUAL AGENT**
    1. Treat all clients honestly.
    2. Provide information about the property to the buyer or tenant.
    3. Disclose all latent material defects in the property that are known to the Licensee.
    4. Disclose financial qualification of the buyer or tenant to the seller or landlord.
    5. Explain real estate terms.
    6. Help the buyer or tenant to arrange for property inspections.
    7. Explain closing costs and procedures.
    8. Help the buyer compare financing alternatives.
    9. Provide information about comparable properties that have sold so both clients may make educated decisions on what price to accept or offer.

    **WHAT LICENSEE CANNOT DISCLOSE TO CLIENTS WHEN ACTING AS A DUAL AGENT**
    1. Confidential information that Licensee may know about a client, without that client's permission.
    2. The price or terms the seller or landlord will take other than the listing price without permission of the seller or landlord.
    3. The price or terms the buyer or tenant is willing to pay without permission of the buyer or tenant.
    4. A recommended or suggested price or terms the buyer or tenant should offer.
    5. A recommended or suggested price or terms the seller or landlord should counter with or accept.

    If either client is uncomfortable with this disclosure and dual representation, please let Licensee know.  You are not required to sign this section unless you want to allow the Licensee to proceed as a Dual Agent in this transaction.

    By initialing here and signing below, you acknowledge that you have read and understand this form and voluntarily consent to the Licensee acting as a Dual Agent (that is, to represent BOTH the seller or landlord and the buyer or tenant) should that become necessary.

    _____    _____    _____
    Seller's initials                 Seller's initials         Date

13. Broker is authorized to show the property to prospective buyers represented by buyer's agents, and Broker, in its sole discretion, may pay a part of the above commission to buyer's agent or other cooperating agents.  Broker is authorized in its sole discretion to determine with which brokers it will cooperate, and the amount of compensation that it will offer cooperating brokers in the sale of Seller's property.  Seller acknowledges that the compensation offered to such cooperating brokers may vary from broker to broker.

14. Seller understands that Broker and/or Designated Agent may have previously represented a buyer who is interested in your property. During that representation, Broker and/or Designated Agent may have learned material information about the buyer that is considered confidential. Under the law, neither Broker nor Designated Agent may disclose any such confidential information to you.
15. Seller understands and agrees that other sales associates affiliated with Broker, other than Seller's Designated Agent(s), may represent the actual or prospective buyer of Seller's property. Further, Seller understands and agrees that if the property is sold through the efforts of a sales associate affiliated with Broker who represents the Buyer, the other sales associate affiliated with Broker will be acting as a buyer's designated agent.
16. Seller agrees to immediately refer to Seller's Designated Agent all prospective buyers or brokers who contact Seller for any reason and to provide Seller's Designated Agent with their names and addresses.
17. Broker and Seller's Designated Agent are authorized in their sole discretion, to place a for sale sign on the property, if permitted by law, to remove all other such signs, to place a lockbox on the property, to have access to the property at all reasonable times for the purpose of showing it to prospective buyers, to cooperate with other brokers and to use pictures of the property and to expose property information and/or images to the Internet for marketing purposes.
18. ~~Seller agrees to provide a limited home warranty program from _____ at a charge of $_____ plus options, if any. Seller acknowledges that the home warranty program is a limited warranty with a deductible. Seller acknowledges receipt of the application for such home warranty program. [STRIKE THROUGH IF NOT OFFERED].~~
19. Items such as wall-to-wall carpeting, garage door openers, smoke detectors, built-in appliances, light fixtures, landscaping and many indoor and outdoor decorative items may legally be "fixtures" and if so they must remain with the house unless specifically excluded in the Purchase Agreement. (Discuss this matter with Seller's Designated Agent to avoid uncertainty for all parties regarding what you may take and what should remain with the house, and make specific provisions for these items in the Purchase Agreement.)
20. Seller understands that the information which Seller provides to Seller's Designated Agent as listing information will be used to advertise Seller's property to the public, and it is essential that this information be accurate. SELLER HAS EITHER REVIEWED THE MLS LISTING INPUT SHEET AND REPRESENTS THAT THE INFORMATION CONTAINED IN IT IS TRUE AND ACCURATE TO THE BEST OF SELLER'S KNOWLEDGE, OR SELLER UNDERSTANDS THAT THEY HAVE AN OBLIGATION TO PROVIDE ACCURATE, TRUTHFUL INFORMATION TO BE PUT IN THE MLS INPUT SHEET AND HEREBY PROMISES TO FULFILL THIS OBLIGATION. ~~Although Seller is listing Seller's property in its present physical condition ("as is" condition), Seller understands that Seller may be held responsible by a buyer for any latent or hidden, undisclosed defects or concealed defects in the property which are known to Seller but which are not disclosed to the buyer.~~
21. Seller agrees to save and hold Broker harmless from all claims, disputes, litigation, judgments, and costs (including reasonable attorney's fees) arising from Seller's breach of this agreement, from any incorrect information or misrepresentation supplied by Seller or from any material facts, including latent defects, that are known to Seller that Seller fails to disclose.
22. This contract shall be binding upon and inure to the benefit of the heirs, administrators, successors, and assigns of the parties hereto. This contract can only be amended by a writing signed by the parties.
23. THE PARTIES UNDERSTAND AND AGREE THAT IT IS ILLEGAL FOR EITHER OF THE PARTIES TO REFUSE TO DISPLAY OR SELL SELLER'S PROPERTY TO ANY PERSON ON THE BASIS OF RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, ANCESTRY, AGE, ORDER OF PROTECTION STATUS, MARITAL STATUS, PHYSICAL OR MENTAL HANDICAP, MILITARY STATUS, SEXUAL ORIENTATION, UNFAVORABLE DISCHARGE FROM MILITARY SERVICE, FAMILIAL STATUS OR ANY OTHER CLASS PROTECTED BY ARTICLE 3 OF THE ILLINOIS HUMAN RIGHTS ACT. THE PARTIES AGREE TO COMPLY WITH ALL APPLICABLE FEDERAL, STATE AND LOCAL FAIR HOUSING LAWS.

Seller hereby acknowledges receipt of a signed copy of this agreement and all attachments. The attachments include the following: [HERE LIST ALL ATTACHMENTS]._____
_____.
(If seller is married both signatures are required)

SELLER:_____          _____, Broker

SELLER:_____          BY: _____  DATE: _____

ADDRESS:_____          _____  DATE: _____
_____          Seller's Designated Agent

DATE:_____          PHONE:_____  OFFICE:_____

```
 /S/ JOJI TAKADA       ,
Joji Takada, not individually but as
Chapter 7 Trustee to the estate of
Kubas
```

Form 342 REVISED 2/19/10           3/3           Copyright© by Illinois Association of REALTORS®

# RIDER TO EXCLUSIVE LISTING AGREEMENT
## (KUBAS)

This Rider is expressly made part of that certain Exclusive Right to Sell (the "Listing Agreement") between Joji Takada, not individually but as Trustee for the estate of Kubas ("Trustee"), and Michael Hansbrough and Prestige Properties Real Estate Pros., Inc. (collectively, "Broker") relating to the listing for sale of the single-family residence located at 2116 Glenridge Court, Plainfield, Illinois (the "Real Estate").

1. Should there be any conflict between the terms of the Listing Agreement and this Rider, the terms of this Rider shall control.

2. Trustee and Broker acknowledge and agreed to the following:

    (a) The Listing Agreement is subject to court approval in the bankruptcy case of *In re Kubas*, Case No. 18-35634, pending in the U.S. Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court").

    (b) No compensation or reimbursement of expenses shall be earned, due and payable to Broker under the Listing Agreement or otherwise except upon approval of the Bankruptcy Court, closing of a sale, and disbursement of the sale proceeds to Trustee.

    (c) The Real Estate shall be sold "as is/where is", without any warranties of any kind or nature, except as to title.

    (d) Any and all contracts for sale of the Real Estate shall be subject to approval of the Bankruptcy Court.

    (e) The term of the Listing Agreement will commence upon the day that an order entered by the Bankruptcy Court authorizing the Trustee to enter into the Listing Agreement becomes final and non-appealable and will continue for six months thereafter (the "Initial Term"); provided, that Trustee and Broker may extend the Initial Term for one or more additional six-month periods by agreement in writing.

    (f) The Listing Agreement may be terminated at any time, without fee or penalty, by order of the Bankruptcy Court.

    (g) The initial marketing price for the Real Estate will be not less than $275,000.00.

    (h) Broker shall receive a commission of 5.0% of the gross sale price.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Case No.:18-35634 |
| | ) |
| Denise M. Kubas Longo, | ) Chapter 7 |
| | ) |
| | ) Honorable Pamela S. Hollis |
| Debtor(s). | ) (Joliet) |
| | ) |

## AFFIDAVIT OF MICHAEL HANSBROUGH
## OF PRESTIGE PROPERTIES REAL ESTATE PROS, INC.

I, Michael Hansbrough, state the following as my affidavit in support of the Trustee's Motion to Employ Real Estate Broker ("Trustee's Motion"):

1. I am a realtor licensed by the State of Illinois, and I am associated with the real estate brokerage firm of Prestige Properties Real Estate Pros, Inc. ("Prestige Properties") which maintains offices at Two River Place, Suite E, Lansing, Illinois 60438. I am authorized to make this affidavit on behalf of Prestige Properties. I am not a creditor of the estate in the above-captioned bankruptcy case, and I represent and hold no interests that are adverse to the estate.

2. To the best of my knowledge and belief except as disclosed in the Trustee's Motion, neither I nor any employee of Prestige Properties has any connection with the (i) above-named Debtor, (ii) Debtor's creditors, (iii) the United States Trustee, (iv) any person employed by the United States Trustee, or (v) any other party in interest, their respective attorneys and accountants.

3. I have discussed the marketing and sale of the property to be sold with the Joji Takada, not individually, but as Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Denise M. Kubas Longo. Prestige Properties has previously been employed by Trustee to market and sell real estate in other Chapter 7 cases and non-bankruptcy related cases.

4. Neither I nor any employee of Prestige Properties hold or represent any interest adverse to that of Trustee, the bankruptcy estate, or the United States Trustee.

5. Based on the foregoing, I believe I and the employees of Prestige Properties are disinterested persons within the meaning of Section 101(14) of the Bankruptcy Code.

6. I have advised Trustee of my firm's willingness to serve as Trustee's real estate broker with respect to the subject real estate based on the terms set forth in the Purchase Agreement attached to the Trustee's Motion, with payment of compensation to be subject to allowance by this Court.

EXHIBIT B

{00010847 / 2016 / 012 /}                                    1

7. I will seasonably amend this affidavit to the extent that I become aware of relationships for which disclosure is appropriate.

FURTHER AFFIANT SAYETH NAUGHT.

Dated: __2/4/19__, _____ /s/ Michael Hansbrough
Michael Hansbrough
Prestige Properties Real Estate Pros, Inc.